SORONDO, J.
(dissenting)
Because I believe the defendant’s plea colloquy clearly communicated that the trial court could not guarantee when defendant would be deported or how much time he might have to spend in jail before deportation, I respectfully dissent.
As concerns the issue presently before this Court, the defendant’s plea colloquy was the following:
DEFENSE COUNSEL: He said he will accept the Court’s plea offer, 15 year minimum mandatory as an HO. For the record, I explained to him the conversation we had sidebar. There really is no difference as far as the actual time that he will be serving. It will only come into play if he had anything beyond 15 years or if he was declared or designated an HVO.
COURT: Or if he committed another crime he already has that designation. If he is going to be deported, as you said side bar, the HVO will make a difference in the institution. As an HO with a minimum mandatory — I’m not giving him legal advice. You never know exactly what Corrections will do but that is our best guess. Does the defendant understand?
DEFENDANT: I understand it but I would like to have a special condition from the Court.
COURT: What?
DEFENDANT: That whenever Immigration is ready to deport me that they go ahead and do that.
COURT: I have no problem with Immigration deporting him whenever they are ready. I will recommend deportation as soon as possible. I can make it a recommendation. Swear in Mr. Santana.
[[Image here]]
COURT: One more thing you need to understand, Mr. Santana, as you plead guilty to a 15 year minimum mandatory as an HO, I cannot tell you how many years you will serve. The Department of Corrections does that. Neither I nor your lawyer can tell you that. Do you understand?
DEFENDANT: Yes. I am really pleased about what he has indicated that you will put down that whenever Immigration is available—
COURT: Understand that no representation is being made by me or your attorney as to when you will be deported or how long of a time you will serve in jail. Do you understand that?
DEFENDANT: Yes, your honor.
(Emphasis added). The above cited colloquy establishes that defendant was advised that there were no guarantees about when he would be deported, and conclusively refutes his present contention that his plea was involuntary because he was under the impression that he would be deported as soon as INS was ready for him.
In addition to its different perspective on the above quoted portion of the transcript, the majority quotes statements which the lower court made at a “later hearing.” In this regard I make two observations. First, the original sentence was imposed on September 24, 1996. The “later hearing” was conducted on April 15, 1997. The judge correctly acknowledged that she was without jurisdiction to modify the sentence because more than sixty days had passed from the date of sentencing. See Fla.R.Crim.P. 3.800(c). The actual exchange was the following:
[DEFENSE COUNSEL]: Page five, Judge. [Defense counsel] on behalf of Mr. Santana.
*819 There have been several hearings regarding modification of Mr. Santana’s sentence. In the transcript, back on September 24th, Mr. Santana was sentenced on page two of the transcript. He states he would like a special condition from the court. And I left my copy at the office.
THE CLERK: I have a copy for you, Judge ... J
[DEFENSE COUNSEL]: Anyway, there is a special condition that he be deported. And if you look in the transcript there is a recommendation, at the time of sentencing in the transcript. There is specifically a special condition, Your Honor, because of a problem with immigration, that he be deported. INS’s recommendation for deportation. And we need to make it a recommendation.
THE COURT: I’m not sure I understand. you want me to modify his sentence so that the sentence reflects a special condition that he be deported when immigration — I didn’t make it a special condition because I just didn’t know if I had jurisdiction over that. I think it was something that they do or they don’t know [sic]. I don’t know if I have jurisdiction after thirty days. I would say to order deportation, is not my jurisdiction.
[DEFENSE COUNSEL]: For immigration purposes. Mr. Santana wasn’t present. They had a different recommendation, a special condition he was to be deported in the near future.
THE COURT: He was placed on probation?
THE CLERK: No, state prison.
THE COURT: Okay, he was sentenced to state prison. You know, if they want to order him deported, okay, I order him deported as a special condition, it [sic] that makes a difference. I simply don’t think I have jurisdiction. I guess he can always appeal it. That would probably be the right thing. I didn’t recommend it, but, if nobody is going to appeal and if everyone is happy, I’ll order him deported. It’s a special condition of his jail sentence that he be deported. Write it on the file.
[DEFENSE COUNSEL]: I’ll prepare an order.
THE CLERK: If I don’t — so this will be a modification of his sentence.
Because the lower court was without jurisdiction, no modification or reduction of sentence could be lawfully entered on April 15, 1997. The trial judge was well aware of this.
My second observation is that at no time during the April 15th hearing did the trial judge indicate that the true understanding of the parties, at the time of the plea and sentence, had been frustrated. The judge correctly assumed that she did not have the authority to “order” defendant’s deportation. It was undoubtedly because of this that she very clearly warned defendant that there were no guarantees as to how long he might have to wait in jail before being deported. The judge’s subsequent efforts to make everyone “happy,” exceeded her jurisdiction.
I would affirm.